### WILSON et al. v. MARRYATT et al.

(Supreme Court, Appellate Division, Second Department.   November 20, 1896.)

1. CLAIM AGAINST A DECEDENT'S ESTATE—EVIDENCE—DECLARATIONS OF DECEDENT.

On the hearing of an issue as to whether money advanced to decedent by her sons for the purpose of building houses was a gift or a loan, it is not competent for other children to testify that decedent had talked about having saved money with which to build; that she had money in the house where she resided; that one of the houses was free, except a mortgage; that she told of having loaned money to a certain person; and that they never heard her say that she was indebted to her sons.

2. SAME—WHEN PREJUDICIAL—REVERSIBLE ERROR.

Such evidence (considering the relationship of the witnesses) was necessarily prejudicial, as it afforded the inference that the claims were unfounded.

Appeal from surrogate's court, Kings county.

Application by Edmund S. Wilson, as administrator of Mary A. Wilson, deceased, for leave to sell real property of the decedent for the payment of her debts.   From part of the decree, disallowing certain claims, Edmund S. Wilson, individually, and Andrew F. Wilson appeal.   Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Benj. Estes, for appellants.
Charles M. Stafford, for respondents.

BRADLEY, J.   By the petition it is alleged that at the time of her death the decedent was indebted to Edmund S. Wilson in the sum of $1,000 and interest, for money loaned by him to her, and that Andrew F. Wilson had presented to the petitioner a claim of $691, for money loaned by him to her; that, as she left no personal estate with which to pay the debts, the prayer of the petitioner was for direction to dispose, for that purpose, of the real estate of which she died seised.   The matter was referred to a referee to take proofs, etc., and report to the surrogate's court.   The referee having done so, whereby he concluded that the alleged claims be rejected, his report was confirmed, and decree entered accordingly.   In the mean-

time the real property of the deceased had been sold, pursuant to judgment in an action of partition, and by an order of the court the net proceeds of the sale were to remain on deposit pending the proceedings in this matter.    The contest is between brothers and sisters, the children of the decedent; and it is contended on the part of the claimants that there was error in the determination of the facts as presented by the evidence, and in the exclusion and reception of evidence.    It appears that two houses were erected by Mrs. Wilson in her lifetime,—one on Madison street, in the city of Brooklyn, and the other at Newtown, in the county of Queens,—and that her son Robert B. Wilson was the builder of them.    The alleged claim of Edmund S. Wilson was for money loaned by him to his mother to enable her to build the house on Madison street; and, on his behalf, evidence was given by his brother Robert B. Wilson to the effect that Edmund S. loaned his mother $2,000, which came into the hands of the witness to use, and which was used, for such purpose, and that $1,000 of that sum was afterwards repaid from the proceeds of a loan obtained and secured by her mortgage on the premises.    His evidence, and that of Edmund S. Wilson, tended to prove that the decedent loaned of Andrew F. Wilson the sum of $691, which also went into the hands of Robert B. Wilson, and was used by him in the construction of the Newtown house for his mother. There was also some other evidence which the referee and court could have treated as corroborative of the fact that those loans had been made, and that the moneys were appropriated to the uses before mentioned by Robert B. Wilson.    There were some circumstances made to appear bearing upon the credibility of Robert B. as a witness, and which, it is claimed, permitted the referee and court to conclude that he was not entitled to credit; and, in view of the interest of the claimants, the effect which should be given to this evidence was a question for the determination of the court below. The referee, in his opinion, among other things, said:

"From the testimony, I am inclined to hold that Mrs. Wilson never entered into any agreement with her sons Edmund and Andrew whereby she became legally bound to repay them, or either, with or without interest, for money they, or either of them, advanced for the Madison street or the Himrod street house.    Bruce [Robert B.] had lived with his mother until her death.    Frank [Andrew F.] had no other home when not on the road, and Edmund also lived with his mother until his marriage.    Edmund and Frank were both making money."

This is some indication that the referee entertained the view that the relation of claimants to the deceased was such that, if they supplied any money to aid in the erection of the houses, it was reasonable to suppose that it was not with any purpose to create the liability of their mother to repay, but was in the nature of gifts for her benefit.    And he further adds, in his opinion, that "it nowhere appears that the mother ever agreed to repay Edmund or Frank principal or interest."    The question for trial, and to be determined, was whether those sons loaned the alleged sums of money to the decedent, and upon that question (assuming that they advanced the money) the relation between them and her was entitled to some consideration.    Robert B. Wilson testified that in an interview with

his mother, when talking about building the Newtown (Himrod street) house, she had remarked that she could do nothing without money, and he said he would speak to Frank, and see what he says; that, following this, when the three were together, Frank (Andrew F.) said: "Mother, I will loan you the money. * * * Bruce will take what is necessary to build, and charge it to me." The witness further testified that he had Frank's money, and did so use some of it. The offer made to prove by him what amount of his brother's money he used under that arrangement was excluded, as was also the offer to prove by Andrew F. Wilson that he advanced $691 to his brother Robert B., to be used in the construction of the house. This was excluded, and exceptions taken to the rulings. Much incompetent evidence, consisting of testimony given by the contestants of the ex parte declarations of the decedent, and as to what they had not heard her say, was received against the objections and exceptions of the counsel for the claimants. Such testimony was to the effect that the mother talked about having saved money with which to build, and that she had some; that the witness never heard her say she was indebted to any of the boys; that she also heard her say she had money in different places in the house where she resided; that, when the Madison street house had been built, she said it was free, except the $3,000 mortgage to Frost; that the witness had never heard her mother say she was indebted to Andrew F. or Edmund S. Wilson; that she told the witness about having loaned money to Effie Moody. The other contestant testified that she never had heard her mother, after the building was completed, say anything about any indebtedness to Edmund S., and never had heard her say she was indebted to Andrew F. for any money used in building the Newtown house. All this evidence was clearly inadmissible against the claimants. Brown v. Mailler, 12 N. Y. 118; Weller v. Weller, 4 Hun, 195; Graves v. King, 15 Hun, 367.

The remaining question is whether the errors in the exclusion and reception of evidence can be disregarded without prejudice to the claimants, within the meaning of the statute which provides that "such a decree or order shall not be reversed unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby." Code Civ. Proc. § 2545. It may be observed that the question whether the claimants had loaned money to the decedent, and she was indebted to them therefor, was a contested one, of fact, in support of which claim there was some evidence. The purpose of the evidence of the declarations of the decedent (in view of the fact that the witnesses were her daughters) that she had never said to them, or either of them, that she had loaned any money of the appellants, or owed them anything, would seem to have been to afford the inference that she was not indebted to them, and that their claims were unfounded. It cannot be seen that it may not have had such, or some, effect upon the result. In Re Will of Smith, 95 N. Y. 516, it was said by Judge Andrews that, under that section, when the court of review finds that incompetent evidence has been received, or competent evidence rejected, it becomes its duty to determine whether the error prejudiced the party against whom

it was committed. "If it appears to the court that it did not, then its duty is plain. If, on the other hand, the evidence erroneously admitted or rejected was important and material, and the court cannot say that, notwithstanding the error, the judgment is right, or if it entertains a reasonable doubt upon the subject, then we conceive a case presented where the party excepting was necessarily prejudiced, within this section." By the application of that rule, the judgment of the supreme court and that of the surrogate were reversed. And to the same effect was the rule, with the like result, applied in Re Snelling, 136 N. Y. 515, 32 N. E. 1006. Within the construction and effect of that section, the claimants must be deemed to have been necessarily prejudiced by such rulings. The case In re Miner's Will, 146 N. Y. 121, 40 N. E. 788, is plainly distinguishable from those cases, and has no necessary application to the present one.

The provisions of the decree of the surrogate appealed from should be reversed, with costs in this court to abide the final award of costs, and the matter remitted to the surrogate's court to proceed therein. All concur.